THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Heidi A. Williams

    Plaintiff,

  v.                                                 Case No. 18-cv-1020
                                                       Jury Trial Demanded

County of Racine,
Christopher Schmaling,
John Doe No. 1, Jane Doe No. 1,
John Doe No. 2, Jane Doe No. 2,
and Jane Doe No. 3,

    Defendants.

**PLAINTIFF'S BRIEF IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6)**

Plaintiff, Heidi A. Williams, by her attorneys, Pines Bach LLP, responds to Defendants' Motion to Dismiss as follows:

**I.    INTRODUCTION.**

Plaintiff Heidi A. Williams ("Williams") filed a two-count complaint arising from Defendants' violations of her Constitutional rights while she was in their custody. Both counts allege violations of Williams's rights, under the Fourth and Fourteenth Amendments, to receive objectively reasonable medical attention while in the custody of the County and its Sheriff.

While awaiting booking at the Racine County Jail ("RCJ"), Williams, who suffers from rheumatoid arthritis, began to suffer a debilitating attack of palindromic rheumatism. The John Doe Defendants were made aware that she was suffering a

medical emergency that required immediate treatment, but they ignored her. Then, when they finally decided to book her, they crudely manipulated her body and pried her fingers apart to take her fingerprints, before sneaking her out the back door of the RCJ and leaving her lying on the ground.

Count I alleges that Defendants John Doe No. 1, John Doe No. 2, Jane Doe No. 1, Jane Doe No. 2, and Jane Doe No. 3 ("Doe Defendants") all employee guards or contract medical personnel of the RCJ, created unconstitutional conditions of confinement for Williams by failing to respond to her medical needs in a manner that was objectively reasonable.

Count II alleges that Defendants Schmaling and County of Racine ("County Defendants") are responsible for this violation of Williams's constitutional rights because the violation occurred as a result of a policy or custom they implemented. This type of claim was recognized under *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 701 (1978), and is known as a *Monell* claim.

The County Defendants have moved under Fed.R.Civ.P. 12(b)(6), to dismiss Williams's complaint, claiming that she has inadequately pleaded "a necessary pattern of constitutional violations" to constitute a *Monell* claim and inadequately made factual allegations. (Br. at 2.) Their motion should be denied because, as is well established by *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89, 109 S. Ct. 1197, 1204–05, 103 L. Ed. 2d 412 (1989) and its progeny, Williams did not need to plead a "pattern" of violations. Further, Williams has supported all of her claims with sufficient factual allegations to survive the County Defendants' motion.

The County Defendants have misstated Williams's complaint as simply claiming that, "because she did not receive a specific pill at a specific time during those four hours [in custody] she suffered a fit of palindromic rheumatism causing her rheumatoid arthritis to come out of remission." (Br. at 1-2.) In fact, the Doe Defendants' failure to let Williams take that pill (methotrexate) at its scheduled administration time is merely one example of Defendants' unconstitutional treatment of Williams. In addition to that failure, at a minimum they failed: (a) to assess her symptom; (b) respond to her medical emergency; and, (c) facilitate her prompt transportation to a hospital emergency room where she could receive treatment to alleviate the symptoms of her palindromic rheumatism attack once it started. (Complaint ¶¶ 21-46, 56.) It is those failures that Williams alleges prolonged her attack of palindromic rheumatism, caused her significant undue pain and stress which caused her rheumatoid arthritis ("RA") to come out of remission. (Complaint ¶¶ 49, 50.) As Williams alleges, it can be reasonably inferred that such monumental deficiencies by the Doe Defendants arose out of a systemic failure to train and supervise the Defendants directly involved in the proper way to respond to a medical emergency afflicting an individual who was incarcerated for the mere purpose of booking. (Complaint ¶¶ 64-67.)

Consequently, the County Defendants do not meet their burden to show that Williams's complaint should be dismissed. And, contrary to their last argument, this is true for both County Defendants, because in Wisconsin the Sheriff is directly responsible for those held in his jail. Their motion to dismiss should be denied.

## II. LEGAL STANDARD.

A motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P. challenges the legal sufficiency of the complaint, not the ultimate merits of the case. When reviewing such a challenge, the Court must accept as true all of plaintiff's well-pleaded allegations and draw all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 129 S. Ct. 1937, 1949–50 (2009). To withstand scrutiny, a complaint need not be "a model of the careful drafter's art," "pin plaintiffs' claim for relief to a precise legal theory," or provide an "exposition of his legal argument"; rather, it must merely state "a plausible, 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S. Ct. 1289, 1296, 179 L. Ed. 2d 233 (2011)); Rule 8(a), Fed. R. Civ. P. Ultimately, "to survive a motion to dismiss, plaintiffs need only allege enough facts to state a claim for relief that is plausible on its face." *Twombly* at 550 U.S. at 570. Williams's complaint more than meets this standard.

## III. ARGUMENT.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Here, Williams adequately plead that County Defendants failed in their responsibility for Williams's safety and general well-being.

### A. Williams has adequately pled a claim for relief on Count I, giving rise to Count II's *Monell* claim.

Count I is the underlying basis for Williams's *Monell* claim in Count II. Therefore, a brief explication of that claim and of Williams's satisfactory pleading of the claim is appropriate.

Because Williams, at all relevant times, had not yet benefited from a judicial determination of probable cause for her detention (otherwise known as a *Gerstein* hearing), the constitutional standard for the conditions of her confinement is the Fourth Amendment's objective reasonableness standard. *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). The objective reasonableness of an officer's response to a detainee's medical needs is a holistic test guided by four factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Id.* at 530-31; *see also Estate of Perry v. Wenzel*, 872 F.3d 439, 453–54 (7th Cir. 2017). Defendants' conduct must, of course, also cause the harm complained of. *Ortiz*, 656 F.3d at 530. "The severity of the medical condition under this standard need not, on its own, rise to the level of objective seriousness required under the Eighth and Fourteenth Amendments. Instead, the Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

These elements are clearly met in Williams's complaint. Doe Defendants had notice of her medical needs and their seriousness. (Complaint ¶¶ 55, 56.) Even before her attack, she had repeatedly told them of her condition, of the medications she took for it, and of her need to take one of those medications, which was in the purse she surrendered to them, that day. (Complaint ¶¶ 15-19.) Jane Doe No. 2 even acknowledged this need and once returned to Williams's cell to ask her how to spell the name of the requested medication and told her that the nurse would get back to her. (Complaint ¶¶ 19, 20.)

When Williams's attack started, she and her cellmates repeatedly shouted that she was having a "medical emergency," pounded on the cell door, and pushed an emergency alert button in the cell. (Complaint ¶¶ 22-25, 27.) These distress calls were audible throughout much of RCJ, but were entirely ignored by Doe Defendants for a protracted period of time. (Complaint ¶¶ 28-29.) Williams repeatedly cried and pleaded for help, specifically noting that she could not breathe or walk and that she needed to be taken to the hospital emergency room as soon as possible and be given medication to treat the effects of her attacks of palindromic rheumatism and tachycardia. (Complaint ¶¶ 31-35, 38, 39, 41, 42.)

The Doe Defendants did not comply with any of these requests. Nor did they provide any other reasonable medical response. They could have, but did not expedite the simple process of "booking" her so that she could seek her own medical help. (Complaint ¶¶ 41-43.) Instead, they merely yelled at Williams to slow her breathing (despite her statements that she was unable to do so) and moved her to a bench.

(Complaint ¶¶ 33, 35.) Then, with Williams clearly unable to control her own body, the Doe Defendants dressed and positioned her for booking photographs and pried her fingers open and apart in order to record her fingerprints. (Complaint ¶¶ 41.) Finally, after holding Williams for four hours, they took her out of a non-public back door of the RCJ and left her lying on the ground, despite the fact that her husband was waiting for her in the jail lobby where persons who are booked would normally be released. (Complaint ¶¶ 43-46.)

The scope of Williams's requested treatment was hardly "onerous or unreasonable"; nor would it be counter to police interests. *See Wenzel*, 872 F.3d at 453. The administration of a single pill as requested; temporary relief from a harrowing, painful, and humiliating process of physical manipulation; a simple call for emergency medical help in response to a clear medical emergency and in accordance with repeated pleas; and the discharge of so compromised a detainee in some other manner than lying on the ground behind the jail are all responses that would have not only been obvious and reasonable, but that would have placed little to no burden on the Doe Defendants. (Complaint ¶¶ 56-58.)

Finally, Williams's complaint is clear that the Doe Defendants' failure to provide Williams with reasonable medical attention caused her stress and suffering that precipitated, prolonged, and exacerbated her palindromic rheumatism attack, which in turn caused her RA to come out of remission and cause her further long-term suffering. (Complaint ¶¶ 48-52, 61, 62.) She has more than sufficiently pled her claim in Count I.

### B. Williams has adequately pled her *Monell* claim in Count II.

County Defendants are appropriately sued under Count II for the Fourth Amendment violation alleged under Count I. Under *Monell*, a "local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (*citing Monell*, 436 U.S. at 690). A faulty governmental policy, practice, or custom may also consist of a *failure* to enact an appropriate policy. *Id; Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017).

Here, Williams alleges that County Defendants failed to appropriately train and/or supervise Doe Defendants regarding their obligation to provide, or cause to be provided, medical services to individuals being held in custody in the RCJ awaiting booking, the proper handling of medication administration for individuals being held in custody in the RCJ awaiting booking, and the proper response to emergent medical conditions of individuals being held in custody in the RCJ awaiting booking. (Complaint ¶¶ 64, 67.)

"A municipality will be held liable for the violation of an individual's constitutional rights for failure to train adequately its officers only when the inadequacy in training amounts to deliberate indifference to the rights of the individuals with whom the officers come into contact." *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007)

(*citing City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–89, 109 S. Ct. 1197, 1204–05, 103 L. Ed. 2d 412 (1989)).[1]

County Defendants argue that Williams's claim should be dismissed because she "did not allege a pattern of behavior." (Br. at 5.) However, no allegation of any such pattern is necessary. It is settled law that a "repeated pattern of constitutional violations" is specifically set apart as only one of two alternatives for establishing deliberate indifference to the inadequacy of training. *See Jenkins*, 487 F.3d at 492 (*quoting City of Canton*, 489 U.S. at 390 & n.10).

The other alternative arises when, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Indeed, the 7th Circuit has recently reiterated that a single incident can suffice to establish a *Monell* violation, and that the key question is not the repetition of the violations, but whether "the action about which the plaintiff is complaining [is] one of the institution itself, or…merely one undertaken by a subordinate actor." *Glisson*, 849 F.3d at 381.

Even *Connick v. Thompson*, cited by County Defendants, acknowledges that "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."

---

[1] The standard for inadequate training is the same as that for inadequate supervision. *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029–30 (7th Cir. 2006).

*Connick v. Thompson,* 563 U.S. 51, 64, 131 S. Ct. 1350, 1361, 179 L. Ed. 2d 417 (2011). To have deliberately failed in so many ways to address an obvious medical emergency being suffered by a person in custody for mere booking, evinces a systemic failure that it can be reasonably inferred, resulted from an abysmal lack of training.

Williams has complied with the *City of Canton* standard, alleging the obvious need for more or different training, the high likelihood that the inadequacy of the current training caused a violation of constitutional rights by the untrained Doe Defendants, and that the result evinced the County Defendants' deliberate indifference to Williams's constitutional rights. (Complaint ¶¶ 65, 66, 69.) Because, Williams has plead a sufficient complaint against the County Defendants and in support of their motion to dismiss, the County Defendants entirely ignored *City of Canton* and its progeny, their motion must be denied.

Additionally, in addition to their claim that the County Defendants should be dismissed, the County Defendants append a one-paragraph, conclusory argument that Williams's complaint "set forth little more than legal conclusions mechanically reciting the legal elements of her claims." (Br. at 5.) That argument is undeveloped and should be ignored by the Court. Regardless, it is erroneous in any light. Because of the general nature of a *Monell* claim, which is based on an underlying violation, its independent facts naturally are largely based on reference to, and inference from, the facts of the underlying claim.

Nonetheless, Williams has specifically plead that County Defendants exercise control and supervision of the RCJ, set its policies, and hold responsibility for the

supervision and training of those that work there. (Complaint ¶ 9.) She has specifically plead the subject matter of the training and/or supervision that County Defendants failed to appropriately provide. (Complaint ¶ 64.) She has also specifically plead the actions in the operation of the RCJ that demonstrate the obviousness of the need for this training and/or supervision. (Complaint ¶ 65.) She has specifically plead the predictability of the consequences of this failure, and the direct causal connection between this failure and her injuries. (Complaint ¶ 66, 68.) County Defendants do not even attempt to specify what type of further facts Williams is required to allege. Therefore, their argument is forfeited and in any case should be rejected.

### C. The claim against Schmaling is not redundant and should not be dismissed.

Lastly, County Defendants argue that the Court should dismiss Schmaling as a Defendant sued in his official capacity because the presence of the County as a Defendant renders him "redundant." They base their argument on the doctrine that, when a party sues "a government employee in his official capacity it is akin to suing the entity that employs him and the standard of liability is the same." (Br. at 6 (quoting *Second Amendment Arms v. City of Chicago*, No. 10-CV-4257, 2012 WL 4464900 at *4 (N.D. Ill. Sep. 25, 2012)).)

While this doctrine may generally hold true, a *Monell* case involving a Wisconsin jail provides a special circumstance. A *Monell* claim may only be brought where policymakers of the entity sued have responsibility over the actors in the underlying violation. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001) (holding that valid

claim was not made against city where only the officials of the city's policy department, not of the city itself, had responsibility over the actors in the underlying violation).

In Wisconsin, "[a]lthough the sheriff's department is not a suable entity, Wisconsin law specifies that the sheriff of each county is responsible for the care of prisoners and jail conditions within his or her county." *Whitwell v. Hoyt*, No. 04-C-0981-C, 2005 WL 23353, at *1 (W.D. Wis. Jan. 4, 2005) (internal citation omitted, also citing Wis. Stat. § 302.37); *see also Kocken v. Wisconsin Council 40, AFSCME, AFL-CIO*, 2007 WI 72, ¶ 52, 301 Wis. 2d 266, 289, 732 N.W.2d 828, 840 (noting that the "operation of a jail and care of the jail inmates has been recognized as within the constitutional powers of the sheriff, because the operation of the jail gives character and distinction to the office of sheriff."); *Wisconsin Dep't of Corr. v. Kliesmet*, 211 Wis. 2d 254, 264–65, 564 N.W.2d 742, 746–47 (1997) (stating that the "sheriff is ultimately responsible for safely keeping all persons committed to the jail.")

Thus, suing Schmaling may in this case ***not*** be akin to suing the County. Perhaps it is for this reason that *Monell* claims against both a sheriff and his county have been maintained or considered in the past. *See, e.g.*, *Jackson v. Graves*, No. 14-CV-1206-PP, 2015 WL 5577527, at *4–5 (E.D. Wis. Sept. 22, 2015); *Harris v. Clarke*, No. 06-C-0230, 2008 WL 4866683, at *28, n. 70 (E.D. Wis. Nov. 10, 2008).

IV.     CONCLUSION

Williams's complaint states a valid claim for violations of her Fourth and Fourteenth Amendment rights against all Defendants. County Defendants have failed to meet their burden to show that, with all of Williams's pleaded facts accepted as true

and all reasonable inferences drawn in her favor, she has not adequately pled her *Monell* claim against both County Defendants. As a result, County Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully submitted this 7th day of September, 2018.

PINES BACH LLP

*/s/ Lester A. Pines* .
Lester A. Pines, SBN 1016543
Aaron G. Dumas, SBN 1087951

*Attorneys for Heidi A. Williams, Plaintiff*

Mailing Address:
122 West Washington Avenue
Suite 900
Madison, WI 53703
(608) 251-0101 (telephone)
(608) 251-2883 (facsimile)
lpines@pinesbach.com
adumas@pinesbach.com